## HOLLEY et al. v. GENERAL AMERICAN LIFE INS. CO. et al.*

### No. 11262.

Circuit Court of Appeals, Eighth Circuit.

Feb. 1, 1939.

Hyman G. Stein and W. H. Woodward, both of St. Louis, Mo. (Staunton E. Boudreau, John B. Kramer, C. O. Inman, Louis Mayer, and Irl B. Rosenblum, all of St. Louis, Mo., on the brief), for appellants.

Fred L. English, of St. Louis, Mo. (Fred L. Williams, Earl F. Nelson, Allen May, Powell B. McHaney, and Roland F. O'Bryen, all of St. Louis, Mo., Roy McKittrick, Atty. Gen. of Missouri, and Charles L. Henson and William G. Chorn, both of Jefferson City, Mo., on the brief), for appellees.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a decree dismissing this suit for want of equity in the bill of George H. Holley, the complainant, and in the petition in intervention of Abe Tober.

The complainant, as shown by his bill, has an unsecured and unliquidated claim of about ten thousand dollars against the de-

*Rehearing denied Feb. 22, 1939.

funct Missouri State Life Insurance Company (hereinafter referred to as "the Missouri State") which was, as its name implies, a Missouri corporation engaged in the life insurance business. The intervener has 600 shares of stock of that corporation. There is diversity of citizenship and more than three thousand dollars is in controversy.

This suit was commenced January 22, 1938. Its purpose was to secure a decree determining that the acquisition of the assets of the Missouri State, in the fall of 1933, by the General American Life Insurance Company (hereinafter referred to as "the General American"), a Missouri corporation authorized to engage in the life insurance business, was fraudulent and unlawful, and that it holds such assets as a constructive trustee for the benefit of the policy holders, creditors and stockholders of the Missouri State and is accountable to all those having a beneficial interest in such assets. A further purpose of the suit was to secure the appointment of a receiver by the federal court and an accounting under its direction and control.

The bill of complaint and the petition in intervention show: That the assets and business of the Missouri State were taken over by the Superintendent of Insurance of the State of Missouri pursuant to proceedings instituted by him, under the statutes of Missouri relating to insolvent domestic life insurance companies, on August 28, 1933, in the Circuit Court of the City of St. Louis, a state court of Missouri which had jurisdiction of the parties and of the subject matter, and which adjudged that the Missouri State was insolvent and directed the Superintendent of Insurance to take charge and possession of its property and business. That thereafter such proceedings were had in that court that the General American acquired all of the assets and business of the Missouri State under a "purchase agreement" entered into by the then Superintendent of Insurance and the General American, with the approval and at the direction of the state court and pursuant to a decree of that court entered on September 7, 1933. That the Missouri State was dissolved and its charter cancelled. That the state court retained, and still retains, jurisdiction "for the purpose of carrying out the terms and conditions of this order and decree and said Purchase Agreement and for the purpose of disposing of any matter not in this order and decree fully disposed of, and of

any and all matters that may arise in connection with the adjudication of all claims, the determination of the expenses of closing the business and disposing of the assets of defendant company [the Missouri State], and the complete settlement and winding up of the affairs of the defendant company." That the complainant and the intervener had both appeared in the state court proceedings.

In their pleadings, the complainant and the intervener assert that the liquidation or winding-up proceedings of the Missouri State in the state court were instituted by the then Superintendent of Insurance fraudulently and collusively for the purpose of enabling the General American, which had been recently organized, to acquire all of the assets and business of the Missouri State; and that the purported sale of the assets of the Missouri State to the General American was, in fact, no sale at all, was utterly void because contrary to the statutes of Missouri, and constituted a scheme whereby the General American procured the assets and business of the Missouri State without consideration and was, in effect, permitted to liquidate the assets and business of the Missouri State contrary to the statutes of the State of Missouri, §§ 5941–5959, Revised Statutes of Missouri, 1929, Mo.St.Ann. §§ 5941–5959, pp. 4530–4543, which require that insolvent insurance companies be reinsured or liquidated by the Superintendent of Insurance. The complainant and the intervener assert that, under these statutes, the Superintendent must either reinsure the insolvent company or, if he sells its assets and business, he must sell them for cash, and that he has no authority to dispose of them otherwise than by a "sale". It is also asserted by the complainant and the intervener that the General American has mismanaged the assets and business of the Missouri State acquired by it, has lost many thousands of dollars belonging in equity to the beneficiaries of the trust estate of the Missouri State, and has been guilty of waste.

■ It seems so plain to us that the complainant and the intervener are seeking the interference of the federal court in a matter within the exclusive jurisdiction and control of the state court of Missouri, and are attacking the judgment of that court collaterally, that we think it would serve no useful purpose to discuss in detail the terms of the contract by which the General American acquired the assets up-

on which a trust is sought to be imposed, or to consider the statutes of Missouri relating to the sale of the assets of an insolvent insurance company. The pleadings clearly show that the state court had jurisdiction of the subject matter of, and the parties to, the proceedings leading up to the challenged disposition of the assets of the Missouri State. That court not only had jurisdiction, but it had exclusive jurisdiction. Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 88, 89, 43 S.Ct. 480, 67 L.Ed. 871. It was for that court to determine what the statutes of Missouri permitted or required with respect to the disposition of the trust estate, and whether the disposition of the estate which was decreed was, or was not, an authorized disposition. Manson v. Duncanson, 166 U.S. 533, 547, 17 S.Ct. 647, 41 L.Ed. 1105; Murphy v. John Hofman Co., 211 U.S. 562, 569, 29 S.Ct. 154, 53 L.Ed. 327; Byers v. McAuley, 149 U.S. 608, 619, 13 S.Ct. 906, 37 L.Ed. 867; Badger Dome Oil Co. v. Hallam, 8 Cir., 99 F.2d 293, 298; Neblett v. Carpenter, 59 S.Ct. 170, 173, 83 L. Ed. ——; Stoll v. Gottlieb, 59 S.Ct. 134, 138, 83 L.Ed. ——. If the state court was imposed upon, as the complainant and the intervener claim, it could, no doubt, upon a proper showing, seasonably made, have set aside the disposition of the property which it had ordered, recaptured the property, and required some other disposition.

■ Since this suit is an obvious attempt to have a federal court set aside a disposition of the property of an insolvent Missouri life insurance company decreed by a court of that State, and is a collateral attack upon the judgment and decree of that court, it cannot be maintained even if the state court decree was wrong. Freeman on Judgments, 5th Ed., Vol. 2, page 1538; 34 C.J. 555, § 856; Ex Parte Roe, 234 U. S. 70, 72, 34 S.Ct. 722, 58 L.Ed. 1217; Mutual Reserve Fund Life Ass'n v. Phelps, 190 U.S. 147, 159, 23 S.Ct. 707, 47 L.Ed. 987; Evers v. Watson, 156 U.S. 527, 532, 533, 15 S.Ct. 430, 39 L.Ed. 520; Manson v. Duncanson, 166 U.S. 533, 547, 17 S.Ct. 647, 41 L.Ed. 1105; Shields v. Coleman, 157 U.S. 168, 181, 15 S.Ct. 570, 39 L.Ed. 660; Hentschel v. Fidelity & Deposit Co., 8 Cir., 87 F.2d 833, 836, 837; Stoll v. Gottlieb, 59 S.Ct. 134, 138, 83 L.Ed. ——; Neblett v. Carpenter, 59 S.Ct. 170, 173, 83 L.Ed. ——.

In Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, at page 90, 43 S.Ct. 480, at page 485, 67 L.Ed. 871, the Supreme Court of the United States, in dealing with a situation comparable to this, said: "But, if the legality of the state court's action was to be questioned, it could be done only by laying the proper foundation through appropriate proceedings in that court. Covell v. Heyman, 111 U.S. 176, 179, 4 S.Ct. 355, 28 L.Ed. 390; Byers v. McAuley, 149 U.S. 608, 614, 13 S.Ct. 906, 37 L.Ed. 867. Compare Laing v. Rigney, 160 U.S. 531, 16 S.Ct. 366, 40 L.Ed. 525; Metcalf Bros. & Co. v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122; Pickens v. Roy, 187 U.S. 177, 23 S.Ct. 78, 47 L.Ed. 128; Murphy v. John Hofman Co., 211 U.S. 562, 569, 29 S.Ct. 154, 53 L. Ed. 327. If such action had been taken and relief had been denied there, resort could then have been had to appellate proceedings. Wiswall v. Sampson, 14 How. 52, 14 L.Ed. 322. But the judgment of the state court, which had possession of the res, could not be set aside by a collateral attack in the federal courts. Mutual Reserve Fund Life Association v. Phelps, 190 U.S. 147, 159, 160, 23 S.Ct. 707, 47 L.Ed. 987. Nor could it be ignored. Shields v. Coleman, 157 U.S. 168, 15 S.Ct. 570, 39 L.Ed. 660. Lower federal courts are not superior to state courts."

■ Moreover, it is the established rule that the liquidation of a domestic insurance company under the laws of the state of its domicile, where such laws furnish a comprehensive method for the winding up of its affairs by an officer of the state under the jurisdiction of a court of the state, cannot be interfered with by a federal court. Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 88, 89, 43 S.Ct. 480, 67 L.Ed. 871; O'Neil v. Welch, 3 Cir., 245 F. 261, 269; Tolfree v. New York Title & Mortgage Co., 2 Cir., 72 F.2d 702, 704; Motlow v. Southern Holding & Securities Corporation, 8 Cir., 95 F.2d 721, 725–726. A federal court will take no action which will impair or will frustrate the jurisdiction of a state court with respect to such proceedings.

■ The Circuit Court of the City of St. Louis, having first acquired jurisdiction and control of the estate of the Missouri State, could dispose of it in any way which it considered lawful, and other courts are bound to respect its decree. Compare, Buss v. Long Island Storage Warehouse Co., 2 Cir., 64 F.2d 338, 339; Marcell v. Engebretson, 8 Cir., 74 F.2d 93, 98, and

cases referred to in the preceding paragraph of this opinion.

There may be, as the appellees contend, other valid reasons for dismissing this suit, but we find it unnecessary to consider them.

The decree is affirmed.